439 F.2d 821
 UNITED STATES of America ex rel. John D. HUTCHESON, Jr., First Lieutenant, United States Army Reserve, Petitioner-Appellant,
v.
John N. HOFFMAN, Colonel, United States Army, etc., et al., Respondent-Appellee.
 No. 30440.
 United States Court of Appeals, Fifth Circuit.
 March 4, 1971.
 
 Howard Moore, Jr., Peter E. Rindskopf, Atlanta, Ga., for petitioner-appellant.
 John W. Stokes, Jr., U. S. Atty., Allan I. Hirsch, Asst. U. S. Atty., Atlanta, Ga., for respondent-appellee.
 Before TUTTLE, AINSWORTH and SIMPSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 We adopt and affirm the opinion of the District Court, a copy of which is appended hereto.
 
 
 2
 Affirmed.
 
 APPENDIX
 
 3
 United States District Court Northern District of Georgia Atlanta Division
 
 Civil Action Number 13947
 
 4
 United States of America, ex rel. John D. Hutcheson, Jr., 1st Lieutenant, United States Army Reserve
 
 
 5
 versus
 
 
 6
 John H. Hoffman, Colonel, United States Army, Commanding Officer, United States Army Reserve Components Personnel Center, Ft. Benjamin Harrison, Indiana; A. O. Connor, Lieutenant General, United States Army, Commanding General, Third Army, Ft. McPherson, Georgia; and Stanley R. Resor, Secretary of the Army
 
 
 7
 Lieutenant John D. Hutcheson, Jr. seeks review by way of habeas corpus of the decision of the Secretary of the Army denying petitioner's application for discharge. The basis of the application was that the petitioner was entitled to an "extreme community hardship" exemption from active duty and to discharge from the Army — both under Army Reg. No. 601-25 — because in the course of his occupation he was performing services "essential to the maintenance of the health, safety, or welfare of his community." Army Reg. No. 601-25(1-12). The respondents were ordered to show cause why the petition should not be granted. After one time-extension was granted, the response was filed August 6, 1970. From the record thus compiled, it appears that the petition for a writ of habeas corpus must be denied.
 
 
 8
 While an undergraduate at Davidson College, North Carolina, petitioner voluntarily participated as a contract student in the ROTC program, and upon graduation was commissioned as a Second Lieutenant. At that time he was also granted a delay in reporting for active duty, and was permitted to attend graduate school under the Army Delayed Entry Program, Army Reg. No. 601-25. Complaint Paragraph 4.
 
 
 9
 On March 13, 1969, while still in graduate school Lieutenant Hutcheson asked the Army to review his military status for physical and occupational reasons, and advise him what alternatives were available to active duty. Petitioner's Brief, Ex. #1. On July 10, 1969, he was informed that he was to report for active duty February 27, 1970. See Petitioner's Brief, Ex. #2. Having received no other response to his March inquiry, Lieutenant Hutcheson again wrote the Army on July 23, 1969, for information on alternatives to active service. Petitioner's Brief, Ex. #2.
 
 
 10
 Lieutenant Hutcheson received his Ph.D. in the area of urban political and social problems some time in August, 1969. See Petitioner's Brief, Ex. #2. Between that date and September 15, 1969, he accepted full time employment with the Center For Research in Social Change, Emory University. Petitioner's Brief, Ex. #4. He was appointed Assistant Director for Technical Services, and has since played an important role in various research projects designed to empirically develop knowledge of urban social and political problems. Petitioner's Brief, Ex. #5, #6.
 
 
 11
 On October 3, 1969, the Army responded to Lieutenant Hutcheson's March and July letters. Treating his request as a petition for discharge for physical disqualification and community hardship, the Army informed him that he was medically qualified for active duty, and that the field of urban political and social problems was not "essential to the maintenance of the health, safety or welfare of his community" under Army Reg. No. 601-25(1-12). It therefore denied his request for discharge. Respondent's Ex. K. Petitioner appealed (Respondent's Ex. G), but the appeal was denied on the grounds that Lieutenant Hutcheson had not made out a case of community hardship.
 
 
 12
 In February, 1970, petitioner was granted an additional delay in reporting for active duty, to minimize the impact of his leaving on the Center by allowing time for him to complete priority work there. Respondent's Ex. E. The Lieutenant is now scheduled to report for active duty on or about August 27, 1970.
 
 
 13
 Despite the array of statements from Lieutenant Hutcheson's colleagues at the Center For Research in Social Change, the Army was entitled to conclude that the petitioner's services were not "essential to the maintenance of the health, safety or welfare of his community" within the meaning of Army Reg. No. 601-25 (1-12(b)). The community hardship provisions were apparently designed to prevent the loss of citizens whose absence would have an immediate, detrimental impact on their community, such as the loss of a community's only physician. It is not believed that these provisions were intended to allow an ROTC graduate whose obligation for active service was voluntarily incurred to obtain a total exemption from active duty on the grounds that he subsequently decided to obtain a specialized degree, and then accepted employment in a field in which few men possess his qualifications.
 
 
 14
 It is not disputed that Lieutenant Hutcheson plays an important role in the Center's work, or that such work provides important information and assistance to various people and organizations in Atlanta. But there is no evidence that petitioner's services are essential to the health, safety or welfare of his community in the sense that his absence will have an immediate, detrimental impact on the community, or will leave it exposed to dangers which may not otherwise be controlled.
 
 
 15
 The Court of Appeals of this Circuit has held that the work of a VISTA lawyer is obviously in the national interest in a case wherein the petitioner sought a draft deferment under a Selective Service Regulation providing for deferment of a registrant whose employment is "necessary to the maintenance of the national health, safety, or interest." Magaro v. Cassidy, 426 F.2d 137 (5th Cir., filed April 23, 1970). Similarly, another Court considering the same Selective Service Regulation (32 C.F.R. § 1622.22(a)) has ruled that a math and science teacher was engaged in an occupation necessary to the maintenance of the national health, safety or interest, where it appeared that the federal government was currently funding training programs for math and science teachers. Shook v. Allen, 307 F.2d 357, 365-366 (N.D.Ohio 1969). Neither of these cases, however, involve an ROTC officer who took up studies and accepted employment in his chosen field after he voluntarily incurred an active duty obligation, and who now seeks a community hardship exemption from active service.
 
 
 16
 The circumstances of the instant case do not, in short, present an instance in which the petitioner's community will suffer an "extreme" hardship as a result of his entry on active duty at the time for which he is scheduled. The decision of the Army has a basis in fact, and therefore must stand. Cf. Hammond v. Lenfest, 398 F.2d 705 (2d Cir. 1968).
 
 
 17
 Accordingly, the petition for a writ of habeas corpus is denied.
 
 
 18
 It is so ordered.
 
 
 19
 This is the 17th day of August, 1970.
 
 
 20
 SIDNEY O. SMITH,

 Sidney O. Smith, Jr.

 United States District Judge
 
 TUTTLE, Circuit Judge (specially concurring):
 
 21
 I concur in the result. However, I do so by this separate concurrence because I do not subscribe to all that is stated in the opinion of the District Court. In the first place I think that Army Regulations No. 601-25(1-12) are equally applicable to an officer who acquires his status claimed to entitle him to discharge after, as well as before he incurred his ROTC obligation. Whatever conscientious obligations a person might feel to carry out his voluntarily incurred ROTC commitments, I think all military obligations, however undertaken, are subject to the right of every military person to rely on these Army Regulations.
 
 
 22
 Moreover, I cannot concur in the proposition stated by the Army (although not fully accepted by the court) that the field of urban political and social problems was not "essential to the maintenance of the health, safety or welfare of his community." I do not exclude the possiblity that a person possessing appellant's qualifications, if engaged in work strictly locally oriented, would be entitled to discharge under Regulation 601-25.
 
 
 23
 I concur because I agree that there was a basis in fact for the Army's determination that such loss of appellant's services as would occur would not pose such threat to the maintenance of the "* * * safety or welfare of his community," (emphasis added) as contemplated by the relevant regulations.