Arthur S. **KURLAN** et al., Plaintiffs,

v.

Howard H. **CALLAWAY** et al.,
Defendants.

No. 74 Civ. 2986.

United States District Court,
S. D. New York.

Sept. 24, 1974.

Kunstler, Kunstler, Hyman & Gold-berg, New York City, for plaintiffs; Steven J. Hyman, New York City, of counsel.

Paul J. Curran, U. S. Atty., New York City, for defendant Callaway; Louis G. Corsi, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen., New York City, for defendants Wilson & Baker; Robert S. Hammer, Asst. Atty. Gen., of counsel.

ROBERT J. WARD, District Judge.

Plaintiffs, who are members of the New York National Guard ("the National Guard"), move for an order pursuant to Rule 65, Fed.R.Civ.P., granting a preliminary injunction against defendants Howard H. Callaway, Secretary of the Army, Malcolm Wilson, Governor of the State of New York, and John C. Baker, Commanding General of the National Guard. Defendants Wilson and Baker cross-move for an order pursuant to Rules 12(b)(1) and (6), (h)(3) and 56(b), Fed.R.Civ.P., dismissing this action or granting summary judgment as to them.

This case presents questions as to the construction and application of 10 U.S.C. § 269(e)(2) and (g) which were first presented to this Court in Mela v. Callaway, 378 F.Supp. 25 (S.D.N.Y.1974). The facts, which form the basis for this litigation, are more fully set forth in this Court's decision in that case. Plaintiffs, as in Mela, have completed or are about to complete their fifth year of service in the National Guard, a component of the Ready Reserve Forces of the United States, and were serving on active duty for training when their units were activated for service by the President during the postal strike in 1970 ("Operation Graphic Hand"). They seek a transfer to the Standby Reserve on the grounds that their continued participation in the National Guard and the Ready Reserve is contrary to 10 U.S.C. § 269(e)(2), Army Regulation 135–91, ¶ 17(b), and this Court's decision in Mela.

The Court has jurisdiction pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1343 and 1361 inasmuch as the plaintiffs claim a denial of their civil rights by defendants Wilson and Baker acting under color of state law and because the relief plaintiffs seek from defendant Callaway is in the nature of mandamus.

The parties are agreed that the only question here involved which was not before the Court in Mela is the effect to be given to Executive Order No. 8 issued July 10, 1974.[1] Executive Order No. 8 purports to withdraw the Governor's consent to the transfer of certain National Guardsmen to the Standby Reserve. The affected Guardsmen, who are otherwise qualified for transfer, did not serve with their units during Operation Graphic Hand because they were already performing their required active duty for training at various Army posts in the United States.

Plaintiffs contend that the Governor is without authority to withhold his con-

1. "I, Malcolm Wilson, Governor of the State of New York do hereby consent to the transfer to the standby reserve of those members of the New York Army National Guard and the New York Air National Guard, otherwise qualified, who apply for such transfer, and who complete five years of satisfactory service from the date of their enlistment and who actually performed full time duty with their assigned units in the active military service of the United States pursuant to Proclamation 3972 (35 Federal Register 5001) dated March 23, 1970, and Executive Order 11519 (35 Federal Register 5003) dated March 23, 1970, issued by the President of the United States, and do hereby authorize and direct the Chief of Staff to the Governor to accept applications for such transfers and institute processes to affect transfer of qualified applicants as soon as possible, provided, however, that nothing contained herein shall be construed to authorize or permit the transfer to the standby reserve of any member of the New York Army National Guard or the New York Air National Guard who did not actually perform such full time duty with their assigned unit because of their absence from such unit for active duty for training."

sent to transfer from these Guardsmen solely on the basis of the nature of their active duty service and that such a distinction between Guardsmen who have performed active duty denies them equal protection of the laws. U.S.Const., Amend. XIV. In the alternative, they argue that Executive Order No. 8 cannot be applied to those Guardsmen who qualified for transfer prior to the date of its issuance.

■ The first of plaintiffs' contentions must be rejected on the basis of this Court's decision in *Mela*. In *Mela*, this Court held that the consent of the Governor, under 10 U.S.C. § 269(g), was required before a member of the National Guard could be transferred to the Standby Reserve in conformity with 10 U.S.C. § 269(e)(2). The statute, then, vests the Governor with discretion. However, before that discretion may operate, there must be compliance with the requirements of subsection 269(e)(2), chief among which is the requirement that a Reservist have served on active duty other than for training. Therefore, it is clear that the statute authorizes the Governor to distinguish between Reservists who have performed active duty service. In Executive Order No. 8, the Governor has not attempted an unauthorized redefinition of active duty, but rather has identified that group, among all those who have performed the requisite active duty, to whom he grants consent to transfer. Although the Governor might have exercised his discretion on an individual, case-by-case basis, he was not compelled to do so. *Cf.* Fook Hong Mak v. Immigration and Naturalization Service, 435 F.2d 728 (2d Cir. 1970). This Court, therefore, concludes that Executive Order No. 8 is within the authority granted the Governor under subsection 269(g).

■ The next question, then, becomes to whom Executive Order No. 8 applies. This Court agrees with defendants Wilson's and Baker's contention that it applies to any member of the National Guard who had not been transferred prior to its issuance, including those plaintiffs who were eligible for transfer prior to July 10, 1974. The discretion granted the Governor under subsection 269(g) operates between the time a Guardsman becomes eligible for transfer and the actual transfer. Thus, the Governor is free to consent, withhold consent or withdraw consent previously granted until the actual transfer is carried out. An individual or agency vested with discretion is free to change the manner in which that discretion is exercised. *Cf.* Securities and Exchange Commission v. Chenery Corp., 332 U.S. 194, 67 S.Ct. 1575, 1760, 91 L.Ed. 1995 (1947); NLRB v. National Container Corp., 211 F.2d 525 (2d Cir. 1954); Kelly v. United States Department of Interior, 339 F.Supp. 1095 (E.D.Cal.1972); Fraenkel v. United States, 320 F.Supp. 605 (S.D.N.Y.1970).

Nothing in this Court's decision in *Mela* is to the contrary. There, the Court said that if the Governor did not intend his consent to extend to Guardsmen who had been on active duty for training he could have so modified his order granting consent. (378 F.Supp. at 28). In conformity with this Court's decision, the Governor has now unequivocally modified his consent. Plaintiffs have suffered no undue hardship in reliance on the Governor's consent such as might estop its withdrawal. Hornstein v. Laird, 327 F.Supp. 993 (S.D.N.Y. 1971), cited by plaintiffs, is inapposite as there Judge Bonsal found that subsection 269(e) vested no discretion in the Army.

■■ Plaintiffs further argue that Executive Order No. 8 denies them equal protection of the laws and violates 10 U.S.C. § 277.[2] In a case such as this one, where the Court is reviewing an order promulgated by the Governor in his ca-

---

2. "Laws applying to both Regulars and Reserves shall be administered without discrimination—

(1) among Regulars; (2) among Reserves; and (3) between Regulars and Reserves."

pacity as Commander-in-Chief of the National Guard, the Court's power is "extraordinarily limited." Roth v. Laird, 446 F.2d 855, 856 (2d Cir. 1971); Feliciano v. Laird, 426 F.2d 424, 427 (2d Cir. 1970). "[P]urely discretionary decisions by military officials which are within their valid jurisdiction will not be reviewed." Smith v. Resor, 406 F.2d 141, 145 (2d Cir. 1969). This is not the rare case where the military decision is so arbitrary and irrational as to require this Court's intervention. See Roth v. Laird, *supra;* Feliciano v. Laird, *supra.* Section 277 of Title 10 U.S.C. is inapplicable as by its terms it covers only "laws applying to both Regulars and Reserves." Winters v. United States, 412 F.2d 140 (9th Cir. 1969).

For all the foregoing reasons, plaintiffs' motion for a preliminary injunction is denied and defendants Wilson's and Baker's cross-motion for summary judgment is granted.

Settle judgment on notice.