584 F.2d 365
 Captain David A. KARLIN, USAFR, Appellee,
v.
The Honorable Thomas C. REED, Secretary of the Air Force,
Brigadier General James E. Dalton, Commander, Air
Reserve Personnel Center, Denver,
Colorado, Appellants.
 No. 77-1082.
 United States Court of Appeals,
Tenth Circuit.
 Argued Aug. 7, 1978.
Decided Sept. 27, 1978.
 
 Thomas G. Wilson, Dept. of Justice, Washington, D. C. (Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., James L. Treece, U. S. Atty., Denver, Colo., Leonard Schaitman and John M. Rogers, Dept. of Justice, Washington, D. C., with him on the brief), for appellants.
 Richard P. Fox, Los Angeles, Cal., for appellee.
 Before SETH, Chief Judge, and HOLLOWAY and McKAY, Circuit Judges.
 SETH, Chief Judge.
 
 
 1
 This is an appeal by the Government from an order which released Captain Karlin, an Air Force Reserve officer, from his obligations to go on active duty.
 
 
 2
 Under a voluntary program known as the Berry Plan, Captain Karlin was commissioned in the Air Force Reserve and thereby obtained a draft deferment so he could finish his medical residency. This Berry Plan provided that the armed services could select draftable interns for the program after considering the future needs of the services. 32 C.F.R. 58.3(a)(3). Upon selection the individuals were deferred, but they agreed to serve two years of active duty when their residency was completed. Provision was made for consideration of requests for further delay of active duty or exemption from duty. Under the program, Department of Defense Instruction 1205.1(X)(D) provided that should an application based on community essentiality or hardship be initially denied, an appeal may be had to higher authority within the military department concerned for final determination.
 
 
 3
 Captain Karlin had completed his residency but had not yet been ordered to active duty. He then submitted his resignation which stated in part that he was essential to the health and welfare of his community as he was doing clinical research in cancer chemotherapy. This work was being done at the University of Chicago Medical School and Hospital and apparently served Chicago and adjacent areas.
 
 
 4
 The resignation was treated by the Air Force as an application for exemption from active duty and as a resignation. The matter was considered by the appropriate Air Force board. The request of Captain Karlin was supported by a number of letters describing his work and the need at the University Hospital for his speciality. The matter was considered by the Board and his request was denied. The denial recited that his services were urgently needed at Wilford Hall USAF Medical Center, Lackland Air Force Base, Texas, a 1,000-bed center with patients from the Air Force throughout the world. The letter stated that there were "authorized" fourteen internal medicine physicians with training in oncology for the entire service, and there would be only seven without Captain Karlin's services. Also, at the Wilford Hall Medical Center there would only be one assigned for three "authorized."
 
 
 5
 The denial was appealed to the Secretary of the Air Force Personnel Council, relief was denied, and the Captain was ordered to active duty at Lackland Base. However, before he was to report he filed this suit seeking habeas corpus relief, mandamus and asserting jurisdiction under the Administrative Procedure Act. A preliminary injunction was issued.
 
 
 6
 The basic issue on appeal is the extent of the trial court's authority or jurisdiction in its examination of the proceedings conducted by the military in the decision-making process applied to the resignation from the Air Force submitted by the plaintiff.
 
 
 7
 The trial court in its Memorandum and Order of June 29 concluded that the plaintiff had been denied procedural due process, and that the record failed to establish any factual basis for the refusal of the attempted resignation or denial of exemption based on community need. The military was given 90 days to set forth the reasons for the denial of the application of plaintiff, and to permit plaintiff to review and comment on and submit material addressed to the reasons given for denial.
 
 
 8
 The military in August submitted a supplemental administrative record with minutes of the meetings of the Board, and later provided a Report to the Court with exhibits. The due process deficiencies were apparently met, but the trial court in its Memorandum and Order of November 23 held that the supplemental record was otherwise "not curative." The court stated:
 
 
 9
 "All that appears in this record is that someone established a staffing level for a particular Air Force facility. There is nothing to indicate any purpose or need for that staffing level and the essentiality of the petitioner's services at the University of Chicago was expressly admitted."
 
 
 10
 The court concluded that the military had ignored its own regulations and had acted arbitrarily and capriciously.
 
 
 11
 The trial court appears to have applied the "basis in fact" test as it originally concluded that there was no factual base in the record for the refusal of plaintiff's resignation, and in the subsequent order after submission of added material reciting that the supplemental record was not curative. The "basis in fact" test is familiar in the conscientious objector cases, but is rejected in the several reported Berry Plan cases and in the hardship cases where discharge is sought. There is a basic difference between the conscientious objector cases and the Berry Plan cases.
 
 
 12
 It seems useful to first consider the several cases concerning Berry Plan officers who sought their release. Among the earliest of these opinions is Roth v. Laird, 446 F.2d 855 (2d Cir.), which was based in part on the earlier hardship case of United States ex rel. Schonbrun v. Commanding Officer, 403 F.2d 371 (2d Cir.). In Roth v. Laird, the Berry Plan doctor had submitted letters and other documents to demonstrate that he was urgently needed in the community where he practiced. The court there said:
 
 
 13
 "This is the evidence which the Army authorities had before them in considering Roth's appeal. The district court may review action taken by military authorities to insure that it is not violative of applicable regulations . . . or to insure that their decision is not so arbitrary and irrational that it cannot stand . . . ."
 
 
 14
 The court held that " 'purely discretionary decisions by military officials which are within their valid jurisdiction will not be reviewed by this court.' "
 
 
 15
 In the Eighth Circuit case of West v. Chafee, 560 F.2d 942 (8th Cir.), the record there was apparently similar to the one before us. The appellate court in its opinion stated that:
 
 
 16
 "Throughout the administrative process the Navy asserted as the only basis for the denial that the Navy was experiencing a shortage of physicians and consequently needed West in active service."
 
 The court in West also said:
 
 17
 "The district court adopted the latter approach (that the record discloses no basis in fact supporting the Navy decision) and concluded that, because West had made an adequate showing of community essentiality and the record contained no evidence in support of the Navy's conclusion that its need for West was paramount, West was entitled to the exemption."
 
 
 18
 The Eighth Circuit in reversing the trial court held that if any reason is given by the military the decision is not arbitrary and irrational. The "need" the court found was a military need, not a lack of community need, and said: "Measuring military need is peculiarly a military matter, the kind of undertaking the courts should be astute to leave to the military." In the West case the service had shown a service-wide shortage of 43 doctors of West's speciality, and this was sufficient to stand the arbitrary and irrational test.
 
 
 19
 The Eighth Circuit had previously decided Appelwick v. Hoffman, 540 F.2d 404 (8th Cir.), which concerned a Berry Plan doctor. However, the case had the added factor that the doctor had not yet practiced in the community wherein the hardship was asserted to arise. The opinion set forth the limits of consideration to violation of regulations and "arbitrary and irrational."
 
 
 20
 The Second Circuit in Ornato v. Hoffman, 546 F.2d 10 (2d Cir.), considered another Berry Plan doctor's petition and apparently followed the Roth decision although some of the language may be broader. It, however, expressly followed the Schonbrun decision.
 
 
 21
 As to military hardship cases, we find the above standards have been applied in United States ex rel. Schonbrun v. Commanding Officer, 403 F.2d 371 (2d Cir.), referred to above, and in Allgood v. Kenan, 470 F.2d 1071 (9th Cir.).
 
 
 22
 We conclude that the standards or limits set forth in West v. Chafee, Roth v. Laird, Appelwick v. Hoffman and United States ex rel. Schonbrun v. Commanding Officer, should be followed. In arriving at this conclusion we are mindful also of the statements by the Supreme Court in Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842, and the decision in Parker v. Levy, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439, as to personnel decisions or acts by the military.
 
 
 23
 It would not seem necessary to distinguish the conscientious objector cases at length. Such cases as to inductees concern decisions by a civilian board under statutory standards. As to applications for release by members of the services on grounds of conscientious objections, the statutory standards are sought to be applied by the military in an area wherein the service does not purport to possess any expertise. Instead, it is again basically a civilian matter rather than military. See Salamy v. United States, 379 F.2d 838 (10th Cir.); Polsky v. Wetherill, 455 F.2d 960 (10th Cir.); and Smith v. Laird, 486 F.2d 307 (10th Cir.).
 
 
 24
 The trial court here concluded that the decision was arbitrary and capricious, but this was based on a "basis in fact" test. An application of the decisions considered above leads us to a different conclusion. Thus we hold that there was no basis for the review by the trial court of the decision of the military. Adequate reasons, military reasons, were stated. The military needs were stated in contrast to civilian needs, and this was sufficient. It cannot be said that the military decision here was arbitrary and irrational.
 
 
 25
 The trial court also concluded that the decision or act was contrary to service regulations. We must also conclude that the proceedings and evaluations by the boards were in conformance with Department of Defense Instruction 1205.1 which was the only applicable regulation. The military also followed their guidelines or standards which did not qualify as regulations, but were used by both parties as the framework for the development of the facts. See Hall v. Fry, 509 F.2d 1105 (10th Cir.), where clearly no discretion was exercised under AR 135-91.
 
 
 26
 We must conclude that the trial court was in error in that the proper standards for review were not applied, and the judgment must be reversed.
 
 
 27
 REVERSED and REMANDED.