James **ALLGOOD**, Petitioner-Appellee,

v.

Major General Thomas A. **KENAN**, USA, etc., et al., Respondents-Appellants.

No. 24716.

United States Court of Appeals, Ninth Circuit.

Dec. 19, 1972.

Robert E. Kopp, Atty. (argued), Robert V. Zener, Atty., William D. Ruckelshaus, Asst. Atty. Gen., Washington, D. C., Cecil F. Poole, U. S. Atty., Sheldon Deutsch, Asst. U. S. Atty., San Francisco, Cal., for respondents-appellants.

Richard Silver (argued), Francis Heisler, of Heisler & Stewart, Carmel, Cal., for petitioner-appellee.

Before KOELSCH, BROWNING and HUFSTEDLER, Circuit Judges.

KOELSCH, Circuit Judge.

Appellee Allgood was inducted into the United States Army in February 1966, and was assigned to Fort Ord, California. After two weeks of recruit training, he absented himself without permission for some six weeks. Upon his return, while court-martial charges were pending, an Army psychiatrist, Doctor Jewett, examined Allgood and found him to have a "passive-dependent" personality disorder, and opined that Allgood was "basically unsuitable" for military service; he recommended that the Army consider discharging Allgood as unsuitable. AR 636–212. The Army, however, decided to retain Allgood, and conducted a special court-martial; that court sentenced him to three months hard labor without confinement.

Shortly after his court-martial, Allgood again went absent without leave, and remained at large for some two and one-half years, until he was apprehended by the F.B.I. A preliminary investigation was conducted pursuant to Article 32, Uniform Code of Military Justice, 10 U.S.C. § 832. The investigating officer concluded that a charge of desertion [Art. 85, U.C.M.J., 10 U.S.C. § 885] could be made out, but he recommended that Allgood be "boarded from the Army without trial by courts-martial." A subsequent psychiatric examination was performed by a military psychiatrist, Doctor Elias. Doctor Elias confirmed the earlier diagnosis of Doctor Jewett, with respect to Allgood's personality disorder, and he concluded his report with the following statement: "Subject is psychiatrically cleared for any administrative and/or judicial action deemed appropriate by command." He added, how-

ever, that Allgood would "never be an asset to the military service and should be considered for separation under AR 635–212." The Staff Judge Advocate of Fort Ord reviewed these recommendations, but concluded that, "The psychiatric evidence does not present a legal defense to the [desertion] charge. In view of the serious nature of the offense, I would recommend trial by general court-martial." This latter recommendation was approved by the commanding general, Major General Kenan, appellant herein.

Allgood then submitted a request for discharge in lieu of court-martial, pursuant to AR 635–200, ch. 10, which provides, in part:

"An individual whose conduct has rendered him triable by court-martial under circumstances which could lead to a bad conduct or dishonorable discharge may submit a request for discharge for the good of the service in lieu of trial. * * * "

He contended that his request should be granted in view of the psychiatric evaluations of Doctors Jewett and Elias and their opinions that Allgood should be discharged as unsuitable for military service. Those officers required by the regulation to evaluate Allgood's request all recommended against discharging him in lieu of court-martial. His immediate commander stated, "Since I would not recommend discharge for unsuitability UP AR 635–212, I do not recommend approval for what is essentially EM's application for such a discharge." That commander's superior also was of the opinion that Allgood should not be so discharged, and added that Allgood's psychiatric condition could be taken into account by the court-martial board in determining a sentence to be imposed. Major General Kenan then disapproved Allgood's request, and a general court-martial was scheduled.

Allgood thereupon filed a petition for a writ of habeas corpus in the District Court, alleging that the Army's refusal to discharge him was arbitrary, unreasonable, and without basis in fact. The District Court, relying upon the opinions of the two psychiatrists, as expressed in their evaluation reports, concluded, in effect, that Allgood was unsuitable for military service and that the Army should have discharged him. The court thereupon granted the writ, ordering Allgood released from Army custody. We reverse.

Judicial review of Army administrative determinations is quite limited. Courts will review military determinations by habeas corpus to insure that rights guaranteed by the constitution or by military regulations are protected. Where, for example, the military has prescribed a procedure for entertaining requests for release by reason of a soldier's conscientious objection, see, e. g., AR 635–20, habeas corpus will lie to review the military's disposition of such requests. Parisi v. Davidson, 405 U.S. 34, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972); Glazier v. Hackel, 440 F.2d 592 (9th Cir. 1971); Hammond v. Lenfest, 398 F.2d 705 (2d Cir. 1968). Or where military regulations authorize servicemen to request discharges on other grounds, the writ will be available to insure that the military's disposition of such applications is in accordance with its own regulations. Feliciano v. Laird, 426 F.2d 424 (2d Cir. 1970); Cuadra v. Resor, 437 F.2d 1211 (9th Cir. 1970).

On the facts of this case, judicial review is impermissible. Not all military regulations exist for the benefit of the soldier or grant the soldier the right to compel the military to act. The Army's resort, or nonresort, to AR 635–212 to effect the discharge of soldiers deemed unfit or unsuitable is a matter committed to the discretion of the Army, and we are without power to review the exercise of that discretion. Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953) *Accord,* Silverthorne v. Laird, 460 F.2d 1175, 1186 (5th Cir. 1972). This regulation exists for the benefit of the Army, and it does not provide for a request by a soldier for his own discharge. The decision to seek a soldier's release for unfitness or un-

suitability under the regulation is one to be made in the first instance only by the soldier's military commanders. And commanders are not required to initiate proceedings for discharge, or to continue proceedings already initiated, even if military medical consultants have recommended that resort to the regulation might be appropriate in a given case. *Cf.* Silverthorne v. Laird, *supra.*

 Nor is the Army required to grant requests for discharge in lieu of court-martial made pursuant to AR 635–200, ch. 10. A request for discharge under this regulation is directed to the discretion of the officer having general court-martial jurisdiction over a soldier, and may be made only by those who have committed offenses for which a court-martial could impose a bad conduct or dishonorable discharge—that is, those soldiers who have been charged with serious violations of military law. In effect, the request is an offer by the prospective court-martial defendant to accept a discharge under less than honorable conditions and waive proof of the offense at trial. If the Army accepts the offer, it is, of course, relieved of the burden of conducting a court-martial proceeding, but it also immunizes the defendant soldier from the harsher penalties [in this case, imprisonment and dishonorable discharge] which might be imposed by the court-martial board in the event the defendant is convicted. The determination whether to accept or reject such an application involves consideration not only of the rehabilitative prospects of the defendant, but also of command discipline, morale, and similar, uniquely military, factors, " . . . and the balance may differ from time to time and from place to place in a manner beyond the competence of a court to decide." Cf. United States ex rel. Schonbrun v. Commanding Officer, 403 F.2d 371, 375 (2d Cir. 1968). For this reason, the denial of such requests for discharge are not subject to judicial review.

 Allgood also argues that the District Court's order discharging him should be affirmed because the Army violated its own regulations, both in 1966 and again in 1968, by not discharging him by reason of a void induction. The regulation to which he refers, AR 635–200, par. 5–9.1, provides that inductees who did not meet the medical standards for induction at the time they entered the Army will be released by reason of a void induction. That regulation was not in force in 1966. Regulations then in effect required that a request for discharge by reason of void induction be filed within four months after entry into the service. No such request was ever made. And, even if we were to assume that the 1968 regulation would have authorized an inquiry at that time into Allgood's induction, no request for discharge was ever made under that regulation. Moreover, none of the psychiatric evaluation reports prepared prior to the filing of this action suggested that Allgood was medically unfit when he entered the Army; each merely concluded that he was unsuitable to remain in the service, and recommended that he be discharged under AR 635–212. Accordingly, the claim of void induction cannot be considered on this appeal.

The judgment is reversed.